# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: April 10, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | |
| DEBRA GADD | * | |
| | * | |
| Petitioners, | * | No. 20-1474V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Final Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Reasonable basis. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * | * | |

*Bridget Candace McCullogh,* Muller Brazil, LLP, Dresher, PA, for petitioner.
*Kimberly Shubert Davey,* U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On October 3, 2022, Debra Gadd ("petitioner"), filed an application for final attorneys' fees and costs. Petitioner's Fee Application ("Fee App.") (ECF No. 30). For the reasons discussed below, I **GRANT** petitioner's motion and find that a reasonable final award of attorneys' fees and costs is **$22,969.02.**

### I.    Procedural History

On October 27, 2020, petitioner filed a petition pursuant to the National Vaccine Injury Compensation Program. Petitioner alleges that as a result of receiving the influenza ("flu") vaccine on October 31, 2017, she suffered from transverse myelitis ("TM"). Petition (ECF No. 1). The petitioner submitted medical records to accompany the petition. Petitioner's Exhibits ("Pet. Ex.") 1-11 (ECF No. 1).

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the opinion will be available to anyone with access to the Internet.** Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

Following the PAR initial order, petitioner filed additional medical records. *See* Pet. Ex. 12-15 (ECF Nos. 7, 9). The case was reassigned to my docket on January 6, 2021. *See* Notice of Reassignment (ECF No. 11). On February 19, 2023, respondent filed an initial status report indicating that here were no missing records, but that there were issues "which may represent obstacles to compensation." (ECF No. 15). Respondent noted that there is a dispute regarding petitioner's diagnosis of TM, and the one day onset of symptoms, and reported that respondent is not amenable to informal resolution and wished to file a Rule 4(c) report. *Id*. I ordered petitioner to file any additional evidence relating to the onset of symptoms and an expert report. NON-PDF Scheduling Order, February 22, 2021. Petitioner filed one medical record on December 20, 2021, and filed a total of six extensions of time to file the expert report. *See* Pet. Ex. 16 (ECF Nos. 16, 17, 20, 21, 23, 24).

On April 4, 2022, petitioner filed a status report indicating that petitioner will not be filing an expert report or any additional evidence and requested thirty days to file a notice of dismissal or a status report with possible next steps. (ECF No. 25). On May 3, 2022, petitioner filed a motion to voluntarily dismiss the case pursuant to Rule 21(a), the next day I issued an order concluding proceedings pursuant to Rule 21(a). (ECF Nos. 26-27).

On October 3, 2022, petitioner filed the instant motion for final attorneys' fees and costs. Fees App (ECF No. 30). Petitioner is requesting a total of $24,574.02 in attorneys' fees and costs, consisting of $19,302.50 in attorneys' fees and $5,271.52 in costs. Fees App. at 2. Respondent filed a response to petitioner's attorney's fees motion not challenging petitioner's good faith in bringing her claim, but noting that "petitioner has not provided any objective evidence, in the form of expert testimony or otherwise, to support her contention that the flu vaccine caused her to develop TM (or any other injury) and therefore did not have a reasonable basis to bring her claim." Respondent's ("Resp.") Response at 8-9 (ECF No. 31). Further, respondent argues that petitioner cannot establish that the onset of her alleged TM occurred in a medically appropriate time frame to find causation and "without any objective evidence of vaccine-causation, petitioner's claim lacked a reasonable basis when filed, and one was never established. Consequently, fees and costs may not be awarded." *Id*. at 8-9.

Petitioner filed a reply to respondent's response on October 19, 2022. Pet. Reply (ECF No. 32). Petitioner summarized respondent's two argument against reasonable basis, the first is that petitioner did not provide an expert opinion in support of her claim, and the second is that petitioner could not establish that onset of her transverse myelitis occurred in a medically appropriate time frame from which to infer causation. *Id*. at 5.

Petitioner cited to *James-Cornelius*, arguing that an express medical opinion is not required to satisfy the reasonable basis standard for attorneys' fees. Id. (*citing James-Cornelius v. Sec'y of Health and Human Servs.*, No. 2019-2404, 2021 WL 68806 (Fed. Cir. Jan. 8, 2021)). Petitioner cited to cases in the Vaccine Program in which petitioners have been awarded compensation where the onset of their initial symptoms occurred between one and four days. *Id*. at 6-7. (*citing Moore v. Sec'y of Health and Human Servs.*, 07-0645V (Fed. Cl. Spec. Mstr. August 31, 2010; *Raymo v. Sec'y of Health and Human Servs.*, No. 11-0654V, 2014 WL 1092274, at *19 (Fed. Cl. Spec. Mstr. Feb. 24, 2014; *Camerlin ex rel. Camerlin v. Sec'y of Health and Human Servs.,* No. 99-615V, 2003 WL 22853070 (Fed. Cl. Spec. Mstr. Oct. 29, 2003); *Doe/22 v. Sec'y of Health and Human Servs.*, No. [REDACTED] V, 2008 WL 2973913 (Fed. Cl. July 31, 2008); *Davis v. Sec'y of*

2

*Health and Human Servs*, No. 14-978V (Fed. Cl. Spec. Mstr. Apr. 27, 2022); *Echols v. Sec'y of Health and Human Servs*, No. 17-838V (Fed. Cl. Spec. Mstr. Sept. 14, 2021)).

Petitioner additionally cited to cases in the program in which petitioner alleged transverse myelitis claims that were awarded compensation. *Id*. at 7. (*citing Mauro v. Sec'y of Health and Human Servs*, No. 20-1326V, (Fed. Cl. Spec. Mstr. Sept. 27, 2022); *Krietor v. Sec'y of Health and Human Servs*, No. 19-1450V, (Fed. Cl. Spec. Mstr. Sept. 15, 2022); *Glover v. Sec'y of Health and Human Servs*, No. 20-736V, (Fed. Cl. Spec. Mstr. Aug. 24, 2022); *Deacon v. Sec'y of Health and Human Servs*, No. 20-858V, (Fed. Cl. Spec. Mstr. June 17, 2022); *Borders v. Sec'y of Health and Human Servs*, No. 19-535V, (Fed. Cl. Spec. Mstr. June 10, 2022); *Spiegelglas v. Sec'y of Health and Human Servs*, No. 20-539V, (Fed. Cl. Spec. Mstr. Apr. 4, 2022); *Dobyns v. Sec'y of Health and Human Servs*, No. 19-158V, (June 1, 2022); *Kaiser v. Sec'y of Health and Human Servs.*, No. 20-1096V, (Fed. Cl. Spec. Mstr. Apr. 28, 2022). The petitioner argues that her "claim was not frivolous, specious, or hopeless. It was, in fact, feasible." *Id*.

This matter is now ripe for adjudication.

## II.  Medical Records

Upon receiving the flu vaccination on October 31, 2017, petitioner was fifty-eight years old with a prior medical history of panic attacks, obesity, and inflammatory bowel disease. Pet. Ex. 1 at 4, 6, 10; Pet. Ex. 2 at 22. On October 31, 2017, petitioner consulted with a gynecologist to establish care, underwent a pap smear, and received a flu vaccine in her left arm. Pet. Ex. 2 at 22, 39. On November 6, 2017, six days after the flu vaccination, petitioner reported feeling of pressure on her bladder before and after urination. *Id*. at 26. Petitioner returned to the gynecologist on November 14, 2017, with reports of constant pain in her vagina that started on November 1, 2017, one day after the pap smear and the vaccination. *Id*. at 31. On November 30, 2017, petitioner consulted with a neurologist and reported a three week history of "back pain, numbness, and tingling," and pain radiating into both legs, numbness in her perineal region, and painful movements. Pet. Ex. 7 at 21. Petitioner was diagnosed with lumbago and radiculopathy. *Id*. at 22-23. Petitioner underwent three days of pulse steroids in November-December, without any improvement. Pet. Ex. 8 at 116.

On December 1, 2017, petitioner presented to the emergency room with reports of discomfort during urination and bowel movements, and numbness in her legs. Pet. Ex. 7 at 24-27. She reported again that her symptoms started on November 1, 2017, one day after a pelvic exam and flu vaccination on October 31, 2017. *Id*. A brain MRI demonstrated probable meningioma near the pituitary gland region. *Id*. at 29. Petitioner was discharged and returned to her neurologist on December 7, 2017, who recommended she be readmitted to the hospital for more work-up for a possible TM diagnosis, which she did and further reported that the numbness persisted into her lower extremities. *Id*. at 43-50.

Petitioner returned to the neurologist on December 14, 2017, and noted that the infectious etiology in her cerebral spinal fluid was negative. Pet. Ex. 7 at 92. The neurologist assessed lumbago and transverse myelitis and noted that the lack of oligoclonal bands in her cerebral spinal fluid made multiple sclerosis unlikely. *Id*. at 94. On January 9, 2018, petitioner returned to the neurologist with reports of 6/10 pain, numbness in her low back and into her legs, and

3

numbness after bowel movements. Pet. Ex. 7 at 96. On January 29, 2018, petitioner underwent a NCS/EMG which revealed bilateral S1 radiculopathies and no definite evidence of a generalized process such as polyneuropathy. *Id*. at 100.

Petitioner sought another medical opinion from the Cleveland Clinic Neurologic Institute, and on January 31, 2018, a letter from a neurologist there stated that a TM diagnosis was "possible," but imaging was atypical for TM and her spine MRI was compatible with a diagnosis of sarcoidosis. Pet. Ex. 7 at 104-115. The neurologist suggested physical therapy, and by February 8, 2016, petitioner had completed eleven physical therapy sessions with improvement in pain and endurance. Pet. Ex. 7 at 121-122.

On March 2, 2018, a neurologist from the Cleveland Clinic noted that petitioner's principal neurologic diagnosis was "myelitis with meningeal enhancement of undetermined cause." Pet. Ex. 8 at 60. Additionally, the neurologist noted that "MRIs done in [December] 2017 showed a possible C4-6 heterogenous cord signal without enhancement, associated with posterior meningeal enhancement all along the thoracic and lumbar spine, associated with areas of posterior nodular enhancement of the thoracic spinal cord." *Id*. The diagnosis was listed as "Transverse myelitis (HCC)." *Id*. at 61.

In April 2018, petitioner was admitted to the Cleveland Clinic, and the reason for her hospitalization noted "spinal cord lesions concerning for neurosarcoidoses." Pet. Ex. 8 at 116. Petitioner "had two trials of steroids with minimal improvement of her numbness and weakness and has been extensively worked up for potential causes (paraneoplastic, syphilis, copper, anti-ENA, Lyme, NMO, IL-2 receptor ab) with the only positive finding being an elevated ACE level…most recent MRI (4/3) showed enhancing mass in suprasellar cistern concerning for meningioma." *Id*. at 117.

On April 24, 2018, petitioner was noted to have transverse myelitis, "which after extensive evaluation…may be related to sarcoidosis." Pet. Ex. 7 at 177. Petitioner's remaining care was transferred to the Cleveland Clinic. *Id*. at 171-178. During the remainder of 2018, petitioner underwent extensive imaging and workups. Upon examination her reflexes were brisk "Biceps 3+, BR2+, patellar 3+, Achilles 2+…Hoffman positive." *Id*. at 118. She had diminished pinprick and vibration sensation in the L5-S2 dermatomes, and had an unsteady gait. *Id*.

By April 2019, petitioner discontinued care at Cleveland Clinic due to an insurance change and returned to her original neurologist. Pet. Ex 7 at 132. On June 19, 2019, petitioner felt that her weakness had increased and had not received any benefit from physical therapy, she was still using a cane to ambulate, and continued to have back pain and numbness, and anxiety attacks. *Id*. at 136-140. By October 6, 2020, petitioner continued to report ongoing weakness and was continuing to use her cane to ambulate, along with taking gabapentin and medical marijuana. Pet. Ex. 14 at 2-4.

### III. Legal Standard

### A. Good Faith

Petitioner is entitled to a presumption of good faith as is the government. *Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice,* 36 Fed. Cl. at 121. Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner v. Sec'y of Health & Human Servs.*, 2007 WL 4410030, at *5. The good faith requirement has been described as "a subjective standard that focuses upon whether petitioner honestly believe he had a legitimate claim for compensation." *Turner,* 2007 WL 4410030, at *5. Black's Law Dictionary explains that bad faith involves conduct indicating "dishonesty or belief, purpose, or motive." Black's Law Dictionary (11th ed. 2019).

### B. Reasonable Basis

"Good faith" and "reasonable basis" are two distinct requirements. *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020); *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017); *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham*, 971 F.3d at 1344. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records).

The Federal Circuit has subsequently held that "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion." *Cottingham*, 971 F.3d at 1345. While the Court in *Cottingham* did not purport to identify all forms of objective evidence, it stated that "objective medical evidence, including medical records… even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Id.* at 1346 (citing *Harding v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 381, 403 (Fed. Cl. 2019)). The Court also held that the special master should consider as objective evidence a vaccine package insert, specifically a section titled "Adverse Reactions" which listed several injuries that were also listed in the petitioner's medical records. *Id.* The *Cottingham* Court also reiterated that the reasonable basis determination is still based on a "totality of the circumstances." *Id*.

5

In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham,* 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation. *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1012 (Fed. Cir. March 15, 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376-77 (Fed. Cir. 1994) for the holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). "Petitioners' counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 724, 727 (2016)).

### IV. Discussion

### A. Good Faith

There was no doubt that petitioner had an honest belief that she had a legitimate claim for compensation. Respondent does not argue that petitioner lacked good faith when they brought their initial claim, nor that their claim lacked good faith for the consideration for attorneys' fees and costs. Resp. Response. Accordingly, I conclude that the petitioner's satisfied the good faith requirement.

### B. Reasonable basis

The Vaccine Act permits attorney's fees and costs "incurred in any proceeding on" an unsuccessful "petition filed under section 300aa-11, if that "petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." § 300aa-15(e)(1). It is also true that claim can lose reasonable basis as the case progresses. *Perreira v. Sec'y of Dep't of Health & Human Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994).

Respondent argues that petitioner has not provided any objective evidence in the form of expert testimony or expert reports to support her contention that the flu vaccine caused her to develop transverse myelitis or any other injury. Resp. Response at 8. Further, respondent argues that petitioner consulted with experts, but they were unable to support her claim. *Id*. Secondly, respondent argues that petitioner could not establish that the onset of symptoms within one day is

a medical-appropriate timeframe from which to infer causation for a diagnosis of transverse myelitis. *Id*.

Petitioner cited to *James-Cornelius,* which explains that a medical opinion is not required to satisfy the reasonable basis standard for attorneys' fees. *James-Cornelius v. Sec'y of Health and Human Servs.*, No. 2019-2404, 2021 WL 68806 (Fed. Cir. Jan. 8, 2021). The Federal Circuit holdings in *James-Cornelius* and *Cottingham* stress that reasonable basis should be based on the totality of the circumstances. *Id*; *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337 (Fed. Cir. 2020). Consistent with *Cottingham*, petitioner has filed contemporaneous and facially trustworthy medical records demonstrating: (1) that petitioner received a covered vaccine; (2) that the vaccine was administered in the United States; (3) that petitioner experienced symptoms she alleges are associated with her vaccine; and (4) that these symptoms persisted for at least six months. 971 F.3d at 1345-46. Petitioner affirmed in her affidavit that she has not previously collected an award or settlement for the alleged vaccine injury. Pet. Ex. 12.

Transverse Myelitis is generally accepted to be an autoimmune disease, and petitioner cited to a number of cases in the Vaccine Program in which compensation was awarded.[2] In the present cast there is sufficient evidence of possible transverse myelitis – in this situation a complicated diagnosis that caused medical uncertainty between a straightforward transverse myelitis diagnosis and sarcoidosis. Petitioner demonstrated positive findings on the MRI that was called transverse myelitis by the radiologist. Pet. Ex. 8 at 60, 115-119. Petitioner received extensive workups at various hospitals, including blood work, CSF analysis, multiple MRI's, a PET Scan, and an EMG/NCS. Pet. Ex. 7 at 29, 94, 100; Pet. Ex. 8 at 104-115. Additionally, possible alternative causes of her signs and symptoms were ruled out including, paraneoplastic, syphilis, copper, anti-ENA Lyme or NMO. Pet. Ex. 8 at 118. A diagnosis of transverse myelitis was contemplated multiple times in the medical record, including December 14, 2017, January 31, 2018, and March 2, 2018, all while petitioner was experiencing ongoing symptoms of numbness and pain. *See* Pet. Ex. 7 at 43-50, 92-94, 104-115; Pet. Ex. 8 at 61. Based on the medical records it does appear that she at least had enough evidence for reasonable basis in that she established receipt of the flu vaccine, a possible diagnosis of TM, which is autoimmune and has been compensated previously in the Vaccine Program. No alternative explanation despite extensive testing was determined.

Regarding the onset of petitioner's symptoms, petitioner cited to cases in the program in which petitioners have been awarded compensation where the onset of their initial symptoms occurred between one to four days, and petitioner's medical record demonstrate at least borderline timing accepted in the Vaccine Program.[3] The petitioner argues that her "claim was not

---

[2] *Mauro v. Sec'y of Health and Human Servs*, No. 20-1326V, (Fed. Cl. Spec. Mstr. Sept. 27, 2022); *Krietor v. Sec'y of Health and Human Servs*, No. 19-1450V, (Fed. Cl. Spec. Mstr. Sept. 15, 2022); *Glover v. Sec'y of Health and Human Servs*, No. 20-736V, (Fed. Cl. Spec. Mstr. Aug. 24, 2022); *Deacon v. Sec'y of Health and Human Servs*, No. 20-858V, (Fed. Cl. Spec. Mstr. June 17, 2022); *Borders v. Sec'y of Health and Human Servs*, No. 19-535V, (Fed. Cl. Spec. Mstr. June 10, 2022); *Spiegelglas v. Sec'y of Health and Human Servs*, No. 20-539V, (Fed. Cl. Spec. Mstr. Apr. 4, 2022); *Dobyns v. Sec'y of Health and Human Servs*, No. 19-158V, (June 1, 2022); *Kaiser v. Sec'y of Health and Human Servs.*, No. 20-1096V, (Fed. Cl. Spec. Mstr. Apr. 28, 2022).

[3] *Moore v. Sec'y of Health and Human Servs.*, 07-0645V (Fed. Cl. Spec. Mstr. August 31, 2010; *Raymo v. Sec'y of Health and Human Servs.*, No. 11-0654V, 2014 WL 1092274, at *19 (Fed. Cl. Spec. Mstr. Feb. 24, 2014; *Camerlin*

frivolous, specious, or hopeless. It was, in fact, feasible," and I agree. *Id.* Counsel responsibly dismissed the case when she was unable to get an expert opinion and the fee request is accordingly modest.

### V. Attorneys' Fees and Costs

#### a. Legal Standard

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). Section 300aa-15(e)(1) of the Vaccine Act provides that, "[i]f the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."

As explained above, petitioners' case was dismissed, when petitioner was not able to get an expert opinion. Additionally, as I found petitioner brought the petition in good faith and with a reasonable basis, petitioners' counsel is still eligible for reasonable attorneys' fees and costs.

Petitioners "[bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1993). Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484 n.1. The special master has the discretion to reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313 (Fed. Cl. 2008), *aff'd* No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

#### b. Attorneys' fees

Petitioners' request reimbursement for attorneys' fees in the total amount of $19,302.50, for work performed by attorneys, Ms. Bridget McCullough, Mr. Max Muller, and paralegals, Mr. Erik Pavlacsek, Mrs. Marcela Senerth, Ms. Tereza Pavlacsek, and Ms. Stacey Bowman. Fees App. at 1. Petitioners request that the attorneys and paralegals be reimbursed at the following rates for work performed in this case between 2020 through 2022:

| Attorney/Paralegal Name | 2020 | 2021 | 2022 |
|---|---|---|---|
| Ms. Bridget McCullough | $250.00 | $275.00 | $350.00 |

---

*ex rel. Camerlin v. Sec'y of Health and Human Servs.*, No. 99-615V, 2003 WL 22853070 (Fed. Cl. Spec. Mstr. Oct. 29, 2003); *Doe/22 v. Sec'y of Health and Human Servs.*, No. [REDACTED] V, 2008 WL 2973913 (Fed. Cl. July 31, 2008); *Davis v. Sec'y of Health and Human Servs*, No. 14-978V (Fed. Cl. Spec. Mstr. Apr. 27, 2022); *Echols v. Sec'y of Health and Human Servs*, No. 17-838V (Fed. Cl. Spec. Mstr. Sept. 14, 2021).

| Mr. Max Muller | $350.00 | $375.00 | N/A |
| Mr. Pavlacsek | $125.00 | N/A | $125.00 |
| Mrs. Senerth | $125.00 | N/A | N/A |
| Ms. Bowman | $125.00 | N/A | N/A |
| Ms. Tereza Pavlacsek | $150.00 | $160.00 | $160.00 |

*Id.* at 9.

Mr. Muller's hourly rate has been approved before by me and other special masters, and I find these rates to be reasonable based on his overall experience as an attorney and his experience in the Vaccine Program. *See Wyffels* v. *Sec'y of Health & Hum. Servs.*, No. 18-1874V, 2022 WL 1055165 (Fed. Cl. Spec. Mstr. March 8, 2022); *Roth* v. *Sec'y of Health & Hum. Servs.*, No. 19-0944V, 2022 WL 1197364 (Fed. Cl. Spec. Mstr. March 18, 2022); *Summer* v. *Sec'y of Health & Hum. Servs.*, No. 20-0418V, 2022 WL 1197910 (Fed. Cl. Spec. Mstr. March 18, 2022); *Richards* v. *Sec'y of Health & Hum. Servs.*, No. 20-0984V, 2023 WL 2263277, at *2 (Fed. Cl. Feb. 28, 2023).

Ms. McCullough's rates from 2020 and 2021 have been approved by me and other special masters, but Ms. McCullough's requested rate for 2022 appears to reflect a mid-year rate increase of $50.00. Although the size of the proposed increase is not *per se* objectionable, it is not the practice of the OSM to afford mid-year rate increases to attorneys. Accordingly, I reduce Ms. McCullough's rate to $300.00 per hour for her time billed in 2022, to be consistent with what has previously been awarded. *See, e.g., Hulon* v. *Sec'y of Health & Human Servs.*, No. 19-1985V, 2022 WL 17979836, at *2 (Fed. Cl. Spec. Mstr. Dec. 13, 2022) (awarding Ms. McCullough $300.00 per hour for her work in 2022); *Muniz* v. *Sec'y of Health & Hum. Servs.*, No. 18-994V, 2023 WL 1100302, at *1 (Fed. Cl. Jan. 30, 2023). This results in a reduction of attorney's fees to be awarded of $705.00.

Additionally, petitioners request that the paralegals, Mr. Pavlacsek, Mrs. Senerth, Ms. Bowman, and Ms. Pavlacsek, be reimbursed at rates between $125.00 per hour and $160.00 per hour. Fees App. at 1-2. These rates are consistent with the hourly rate that has been previously awarded in the Program, and the rate shall not be reduced. *See, e.g., Hulon* v. *Sec'y of Health & Human Servs.*, No. 19-1985V, 2022 WL 17979836, at *2 (Fed. Cl. Spec. Mstr. Dec. 13, 2022) (awarding Ms. McCullough $300.00 per hour for her work in 2022); *Muniz* v. *Sec'y of Health & Hum. Servs.*, No. 18-994V, 2023 WL 1100302, at *1 (Fed. Cl. Jan. 30, 2023).

c. **Hours Reasonably Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [his] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton* v. *Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen* v. *Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special masters' reduction of attorney and

paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.,* 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours).

Petitioners' counsel has provided a breakdown of the hours billed and time expended. Fees App. Exhibit A. Petitioner provided a detailed billing statement that explains the tasks performed by both counsels and paralegals and the amount of time devoted to each task. *Id*. I find that the overall hours spent on this matter appear to be reasonable. The entries are reasonable and accurately describe the work being performed and the length of time it took to perform each task. Respondent also has not identified any particular entries as being objectionable. Therefore, consistent with the above, petitioner is entitled to final attorneys' fees of $18,597.50.

### d. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).

Petitioners are requesting a total of $5,271.52 in costs associated with litigating their claim, which included $771.52 in administrative costs such as the filing fee, fees for obtaining medical records, and postage. Fees App. Exhibit B. These administrative costs are typical in Vaccine Program cases and were reasonably incurred in this matter. *Id*. The bulk of the costs included $4,500.00 for Dr. Samuel Pleasure, M.D., PhD, who conducted a preliminary review of the case. *Id*. Dr. Pleasure billed $500.00 per hour for nine total hours, including eight hours for record review, and one hour for a phone call with counsel and drafting a letter. *Id*. at 23. Dr. Pleasure has not been awarded fees in the Vaccine Program before and no CV has been filed. It was only by searching his name on Google that I was able to determine that he is a neurologist, specializing in Multiple Sclerosis and Epilepsy. His preliminary review of the case was never filed, but from the billing records from Ms. McCullough, there were various emails and phone calls exchanged regarding medical records and an expert report. Fees App. at 8. His overall hours for review of the file and discussion with counsel are reasonable. Seeing as no CV has been filed, and he has not previously been compensated in the Vaccine program, Dr. Pleasure's hourly rate will be reduced to $400.00 per hour.[4]

Thus, petitioners' attorneys' cost will be reduced $900.00 based on the reduction for Dr. Pleasure's fees from $500.00 per hour to $400.00 per hour.

### VI. Conclusion

In conclusion with the foregoing, petitioners' motion for attorneys' fees and costs is **GRANTED.** I find that petitioner is entitled to a reimbursement of attorneys' fees and costs as follows:

| Attorneys' Fees Requested | $19,302.50 |
|---|---|

---

[4] Petitioner did not offer any additional evidence regarding Dr. Pleasure, including his CV or the expert report he authored. If Dr. Pleasure is retained as an expert in the Vaccine Program at a later date, he may be awarded $500.00, if properly justified.

| (Reduction in Fees) | -($705.00) |
| --- | --- |
| **Total Attorneys' Fees Awarded** | **$18,597.50** |
|  |  |
| Attorneys' Costs Requested | $5,271.52 |
| (Reduction of Costs) | -($900.00) |
| **Total Attorneys' Costs Awarded** | **$4,371.52** |
|  |  |
| Total Attorneys' Fees and Costs Awarded | $22,969.02 |

**Accordingly, I award a lump sum in the amount of $22,969.02, representing reimbursement for petitioners' attorneys' fees and costs, in the form of a check payable to petitioners' and their attorney, Ms. Bridget McCullough.**

**IT IS SO ORDERED.**

<u>s/Thomas L. Gowen</u>
Thomas L. Gowen
Special Master